Good morning. My name is Terrence Kellogg. I represent Appellant Becky Hunter in this matter. May it please the court, and we hope it does, I'd like to reserve four minutes for rebuttal argument if I could. You have a clock in front of you. It should be ticking now. Yes, there it is. It just started. You will have whatever time is left on the clock when you sit down. Thank you, sir. Your Honor, this appeal is from a sentence of 121 months based upon a determination of the applicable guideline range. It's interesting that in imposition of sentence, Judge Beislein initially said 120 months, which would be in even 10 years. But the degree to which he relied upon the guidelines in determining what the appropriate sentence should be is underscored by the fact that he then reversed himself or rather corrected himself and said that it would be 121 months, what was determined to be the bottom end of the applicable guideline range. And considering a theme for this morning's argument, what I kept coming back to were the terms loss and reasonableness. And the more I thought about it, I think that the theme that I want to leave the panel with this morning is really what we're talking about is justice. That's what we want the court to consider. And that's why we think that a remand for resentencing is appropriate in this case. Mr. Kellogg. Yes. Didn't Judge Beislein consider Ms. Hunter's lengthy record of recidivism in looking at the person who stood before him to be sentenced in fashioning an appropriate sentence for this latest scheme to defraud that she had engaged in? Your Honor, I would agree with you in all except two respects. First off, the use of the term recidivism is appropriate and correct in the term of one who offends over a given period of time. But I typically think of recidivism as someone who's gone through the system, been punished appropriately, come back and reoffended. All right. Well, then let's say that she just engages in a continuing course of fraud. And you can put whatever label you want on it, but we've got somebody who has a long history of engaging in fraudulent activity. And as I read the transcript of the sentencing hearing, it seemed to me that Judge Beislein was looking at this pattern of behavior which repeated itself, sort of the same general theme, but different victims and different methods of defrauding people, and that he arrived at the sentence of 121 months basically to reflect the seriousness of the conduct that he was looking at over a long period of time. I think that that's an appropriate approach to the sentence in this case. I think that Well, under Booker, isn't that what he's supposed to do now that the guidelines are advisory and not mandatory? Isn't the ultimate question that we're really looking at here whether 121 months was a reasonable sentence for all of the behavior that you really don't challenge in the pre-sentence report? I mean, she pled to everything but one count, and then the other. So it seems to me that everything was up for grabs here in terms of fashioning an appropriate sentence. I think that there's another aspect of looking at this that is important for the panel to be aware of, and that is that sentence was in large part determined by what Judge Beislein determined the applicable guideline range to be. And that was almost exclusively determined by the dollar amount of loss. Now, are you going to address the ex post facto question, or have you abandoned that? No, we have not abandoned that, and I do want to address that. And my quick response to that is by this court departing from the precedent, which applies ex post facto consideration to the sentencing guidelines, would be a problem in the justice that I was referring to before. As far as consistency, avoidance of disparity in sentencing, one thing that Judge Tallman That doesn't help you. The ex post facto problem is essentially not a question of consistency. It's a question of fairness to the individual. So if you have six people committing exactly the same crime at different times, and they all get sentenced on the same day, under an ex post facto situation, they would presumably be sentenced under different books, depending on when their crime occurred. So six of them are standing there, they're committing exactly the same crime, they have exactly the same record, you would wind up with different sentences under an ex post facto analysis, because you applied different books to them, because it's unfair to them to hit them with a heavier book passed later, right? So that's not a good argument. Consistency in the law is not a good argument. Consistency in the law would sentence everybody on the same day by the same book, and that would be the end of the matter. What I think you need to address is Judge Berzon's question, which also interests me. Does our precedent apply ex post facto analysis to the sentencing guidelines so far at Booker? Since we no longer have a mandatory system, why isn't this case just like the case involving the expectancy of parole? Was it Dupre was the case? Well, and there's two parole cases, one cited by the government, one cited by us in our reply brief. And the turning of the ex post facto analysis appeared to be on whether or not the element of discretion would remove an ex post facto consideration. What we're saying here, what happened here, is that 2001 was the year that Ms. Hunter committed count 20, the one that she went to trial on, the one that the court determined was responsible for a $1.875 million loss out of a total $2 million loss. But instead of being sentenced under the 2001 guidelines as everybody else who committed that crime in that year, she's being sentenced under a 2003 guideline book only because of those last three counts, which spilled over into 2003, which were minimal as far as the loss. All right, but the question is, and in Orland, as I understand it, we said that you couldn't do that, that you'd have to break it up under the prior regime, under the mandatory regime. Do you agree with that? Yes. All right, so then the question, as Judge Kasinski says, is does that remain good law? Now, what did Judge Beislein say about that? Judge Beislein said that he would consider it as a 3553 consideration, but then we submit he, in fact, did not. All right, but even, so he essentially ruled that Orland is no longer good law after Booker, but that it could be considered as part of a 3553 consideration. Is that what he? Well, he didn't make that specific ruling, but that was his answer to it, and he was troubled by the tail wagging the dog as far as the large amount of loss. He said that  All right, well, suppose he had done what he said he was going to do. Would that be sufficient? That is, is it true that the ex post facto problem backs out as long as you consider it as a 3553? I strongly disagree with that. In fact, that would be the case, because we have that large guideline analysis, which is driving this entire ship. That's how you get to the one Well, it doesn't matter. There's cases pending in this court, on bank and otherwise, having to do with how much the guidelines actually, after Booker, are going to drive the sentence, whether it's presumptive or presumptively reasonable or what. Does the result under Miller and the post Miller case law depend on the outcome of those cases? In other words, on what the details of how we're going to apply the guidelines after Booker? Well, I think that the precedent, as I understand it in this circuit, is you look first to see whether or not there was a mistake in application of the guidelines, and I think that that's what happened here. Secondly, then you determine whether or not it's reasonable, and the reasonableness of it. I'd like to reserve my remaining time, if I might. Okay. We'll hear from the government. Good morning, Your Honors. I'm Karen Leffler, an assistant U.S. attorney here in Anchorage, and I was trial counsel in the case. And I would like to go directly to the ex post facto issue. First of all, because I think in rereading Kienenberger and Ortlund, I somewhat misunderstood the remedy in Ortlund the court was going to, and I think that resolves a lot of the issues here. And if I can explain, in my brief I said Kienenberger and Ortlund were completely inconsistent, but they're not. They address something different. In Kienenberger, they said relevant conduct. It addressed relevant conduct and said it's not ex post facto. In other words, in this case, since there was no dispute that all of this was relevant conduct, you add up all the guidelines. Why is there no dispute that all of this was relevant conduct? Because it was a common scheme or plan. Well, why was it a common scheme? It seemed it was not a common scheme. It was a whole bunch of different, very diverse frauds. I mean, some of them were the same, the identity theft, but others were completely different. And I reread the relevant conduct guideline this morning. It didn't seem to meet a thing. Because the relevant guideline, I'm going to grab it right here. One of the factors it looks at in the application note to the relevant guideline says if the modus operandi. Common purpose, similar modus operandi. And so any fraud counts? No. Here we had virtually identical modus operandi. What it was, in each one of the circumstances, what she did is she either took, she would take a fake name. She would cut and paste documents. She created in some of them fake transunion credit reports. In other ones, she created a fake wire transfer. In other ones, she would call the. Well, let's back up for a minute. Whatever it is, why do you say there's no dispute about this? Okay. Let me explain. Has there been a determination that it's relevant conduct? There was, yeah. In this case, there was, I mean, the pre-sentence report said there was relevant conduct. There was no dispute by the defense. The whole thing is relevant conduct. Wait just a minute. What do you mean by there's no dispute about it? It wasn't, it isn't the way the court sentenced. She didn't sentence on the theory that it was all relevant conduct, did he? Yes. I mean, he did in that. Yes, he did. I thought he sentenced on the theory that this was all, that he was looking at all the separate convictions under a single book. I don't, did he ever make a determination that it was relevant conduct? It was in the pre-sentence report and not disputed. So it wasn't an issue to discuss because it was not disputed. It was not objected to. It was not. But was it relevant to the result? Because as the result, because the pre-sentence report also said, as I understand it, that because there were a series of different convictions, you looked at the last book. So why was it relevant to anything? It was relevant because when you are, what was the, yeah, the pre-sentence report said you look at the last book. Right. But what I'm saying is there wouldn't be any difference. And the reason is because when you add it all up, you get, there were eight. I understand that. But it's only true if there was a resolution of this question of whether there was relevant conduct. And there didn't need to be such a resolution. And I'm, I'm disputing whether it's true or not. It doesn't seem self-evidently true that this was all relevant conduct and therefore it's all, doesn't matter. And I, and I, I'm sorry, I can't go outside the record because all I can say is that it wasn't objected to in the, either the objection to the pre-sentence report. It was found in the pre-sentence report and although there were a lot of issues. But it only matters if it matters. And there was no reason to object to it if it didn't matter. And it appears that it didn't matter on the theory that the district court adopted. The, I think that it would matter and, and if I can explain, in, in 2003, if you, if it wasn't, if the whole scheme wasn't relevant conduct and you applied the 1.875 alone, you're right, you would be between 1 million and 250,000. You would be on that issue alone. But there were also things, there were four two-point add-ons. There were eight-point add-ons. And all of those were considered together. And if you were not, if it wasn't relevant conduct, you would have to separately count them. I'm a little bit lost in this discussion. Maybe you can help me by stepping back just one step. The, we work by exception from the PSR. I think we're, so if the PSR says, you know, slays out the regime and both lawyers stand up and say we have no objection, then the PSR is deemed to be the district court's ruling. Unless, of course, the court says I, I disagree with them. Right. But the court says I adopt the PSR. That's it. I take it in magic words or something like it was said here. So, so the, the PSR in this case laid out the history, her, her history, both relevant conduct and her, you know, her, her convictions and so on, right? And then it applied a particular book. Right. To the whole shebang, right? Okay. Which book was that? It applied the 2003 book to the whole shebang. And if I, when, the part where I'd like to mention that I think Ortland, Orton was not a relevant conduct case. In Ortland. Orton was a book case. It was a book case, but I misread the remedy a little bit. In Ortland, the court presumed relevant. Let's get, let's get past that. Okay. So the, the, the question we have is, is there some constitutional argument based on the ex post facto clause that she was entitled to a book other than the 2003 book? I believe under Kienenberger. I just, I just, I just stated the question. Do you agree that that's the question? I believe that that's the question. Okay. So, so, so the, the question is, we have precedent, Orton, which says because of ex post facto considerations, you have to book the book in effect at the time of the crime of conviction. Not at a time of relevant conduct occurred, but when the crime occurred. And, and if the, there is a different book in effect now, you have to go back that time because you might otherwise have an ex post facto problem. So the question is, does that analysis still survive? I believe that it, it doesn't survive, but there, there's a, but it doesn't affect the sentencing in this case, and that's because of Kienenberger. In Ortland, I agree completely with the court. What the court said in Ortland is what you would do, applying Ortland to this case, if it were still, the guidelines were still mandatory. What you would do is you would get 121 sentence, month sentence on counts 21 and 24. Because you'd use the relevant conduct, just like they did in Ortland. It was a mail fraud scheme, and they considered the, the loss the same for all five counts. You would get 121 month sentence on 21 and 24. If we had a mandatory regime, what you would do is you would recalculate the guidelines as to which book applied in each instance and apply a guideline, concurrent guideline sentence that might be less. Okay? So we would have 121 month sentence on two counts. Mandatory regime, we might have a 97 month sentence or et cetera on the, the lesser counts. And in this case, I think it was 11 of the counts had a, the mail frauds had a maximum of five years. So in the judgment themselves, there's only five, there are five year sentences, concurrent 60 months on those. So those kind of come out of our analysis. Then, that, that would be the Ortland remedy here. There would still be 121 month sentence. Okay. Now what the district court said when he did the sentencing was, there are a number of disputes. With regard to the appropriate guideline book, I think that when you look at the law itself, it's the 2003 guidelines that apply. I recognize that these guidelines are advisory only and so on. So he was doing it the Ortland way. Whatever he could have done, that isn't what he did. Okay? He, he did it the Ortland way. Therefore, I don't see how we can avoid the question of whether that survives. No, what I, I, he did do it the Ortland way. He didn't do it consistent with Ortland. In other words, I understand that. But he did it, he did apply the 2003 book to everything. He didn't say, I'm going to do it via relevant conduct. He didn't do that. He, no, he did not. No, he, he, he, you're exactly right, Your Honor. I'm not disagreeing at all. We have to deal with the exposed factor question. Right, right. All right. And you've been standing up for the last ten minutes telling us we don't. Well, no, I'm saying you have to deal with it. What I'm saying is it would make no practical difference in her total sentence. Well, we could send it back and somebody could decide whether there was relevant conduct, but nobody, he hasn't done that at this point. I understand that it was in the PSR, but it, the way he decided the case, it didn't matter. So he didn't have to deal with it. Okay. Let me go back to the issue of, I think you're, if I, and I mean to answer that you're asking me now to look at the, how the advisory part fits into this. That's correct. So, and it is my position you'd get the 121 months applying Ortland directly to these two. But then the question is, if you did it and followed Ortland exactly, what you would do is you'd say, okay, 121 months on these two. What was the guideline that applied on the other? I think there are four other books that apply. And then we would do a reasonable list. You've got a minute left. On behalf of the United States, whom you represent, okay, does the United States take the position that the ex post facto clause applies to the guidelines and no longer applies to the guidelines now that they are discretionary? I don't take the position. I, I, listen to the question. Yeah. Okay. On behalf of the United States, I don't care about your personal position, standing there representing the Attorney General, does the United States take the position that the ex post facto clause does or does not apply to the guidelines now that they're mandatory? It applies in the context where, under 1B1.1, where in fact, even though they're advisory, we do take the position that Let me make it even more clear because I would like a yes or no answer from you. Yes, no, or I have to check with the Attorney General, okay? On behalf of the Attorney General of the United States, do you take the position that Booker overruled Ortland? I'm sorry, the reason I'm hesitating isn't because I don't want to take the position. I do think the ex post facto applies. I think the United States does. I ask you a question which is capable of a yes or no answer. If you can't give me a yes or no answer, that's fine. If you think you have to check with the Attorney General, we may ask you to write in to us, but I do want a yes or no answer to that question. No, Your Honor, I do know what the Attorney General and the Department's position is. Yes or no? You must not know it very well. Well, no, I do, but the context that we discussed it in... I don't want to hear another word. Yes or no? No. Yes or no? No, but I do want to concede... Thank you. I know, Your Honor. May I concede that it does apply where the sentencing is... If you're applying a book at the sentencing and the book did not apply, if the sentencing takes place after the book, absolutely ex post facto applies. Why? Just to make sure I understand, my question was, does Booker overrule Auckland? You said no. It does not overrule Auckland. I am saying that. Okay, so Auckland applies. It does apply. Okay, so we're now talking about how Auckland applies, which is something we can work out. No, what I want to do, though, because that overstates the Department's position, and I don't want to do that. We do agree that it does apply. Ex post facto applies in the context of if the sentencing... If the 2003 book... If we were sentenced under the 2003 book, but all of the offenses occurred before that, it is the Department's position ex post facto would preclude using those guidelines. So, in other words, the increased discretion that arises because of Booker was not enough under Miller and the subsequent case law to kick the guidelines out of the category of a law for purposes of the ex post facto clause. Is that the analysis? In a situation... Well, in general. In general. It doesn't just kick it out. It isn't that the guidelines now are no longer a law for ex post facto purposes. Yeah, that doesn't just kick it out. Absolutely does not. All right, so your brief plainly takes the position, as I understand it, that with regard to Auckland, however, the ex post facto issue does not arise under the present regime of advisory guidelines. So, although you just stood up and said, no, your brief says yes, is that... I think I overstated it in the brief. Why is the difference between Auckland and the situation in which you say... Oh, I see. So you're now saying that it doesn't kick it out for Auckland purposes either. I'm saying that there's a difference between a situation in which the sentencing... At sentencing, if you're trying to apply it a book, that would apply at the date of sentencing, but not when the crimes were committed. My understanding of your answer, Judge Kuczynski, is there is no difference. I think that there is a difference. There's a difference. I'm really thoroughly confused. It's a fairness... Let me just make it really, really simple. I don't need an explanation of what Auckland holds. We can figure it out. We're pretty smart, okay? So, I don't care about the implications of Auckland. Your position on behalf of the United States is that Auckland is still good law. It has not in any way been overruled by Booker. No, there is a... That's all we need. No, your brief says otherwise. Yeah, I don't think I read... I read an inconsistent... I'm sorry, you didn't ask for an explanation, so I'll stop here. You asked me not to give an explanation. I'm sorry, Your Honor, I'll stop. Look, I mean, this is your last word. This is your position on behalf of the United States, that Auckland is still good law. Auckland is good law, but it is... Kynan-Berger is also good law, and I believe that Kynan-Berger controls this case. So is Miranda v. Arizona good law, right? There are lots of cases that are still good law, but the question was about Auckland. Auckland is still good law. Auckland is good law. Thank you very much. Okay. You've got, I believe, a better part of two minutes. Well, a better part of one minute. I don't know, somewhere around there. Go ahead. Your Honor, we strongly disagree with the government's representation that ex post facto analysis would have made no difference in this case. We're talking apples and oranges. The driving loss, the $1.875 million applied for loan, which was never funded, occurred in 2001, January of 2001. It says count 24, as well as counts 22 and 23, which are minimal amounts of loss, which took it into the 03 guideline book. And there was a huge dramatic... But she says it would all... I understand her explanation. It is that the pre-sentence report said that it was all relevant conduct with regard to the last charge. Is that correct, first of all? No. Did the PSR say that?  All right. Was it ever discussed at the sentencing hearing whether that was true or not? My recollection of having reviewed the transcript several times is that it was never discussed. Did you ever concede that, that it was relevant conduct, that the $1.875 million loss was relevant conduct with regard to the 2003 conviction? We won't concede it. It was never addressed. Well, did you make an objection, though? That's the question. I was not... There was no objection made by whoever was representing Ms. Hunter prior to the sentencing. Because if you didn't... If there was no objection made, why isn't it waived? Because it's plain error. There was... It was an annoying, intelligent, voluntary waiver. It makes a huge, substantial difference in the resulting sentence. The 01 guidelines under 1B1.1... It's plain error. You have to have plain error first. It has to be an obvious error. Well, I think when you look at the conduct from those last three counts, it's much, much different than the conduct of count 20, the count of conviction. Judge Beislein was going by the jury verdict that said this is the amount of money that she... What's obvious about that? I've been listening here for 20 minutes, and I still found it not obvious to me at all. You don't know what the PSR says? We don't have the PSR. We'll submit it to you, Your Honor. Yeah, we'll submit it under the seal. We usually don't get them unless we ask for them. I'll do that. Just submit it under the seal. We can work our way through it. Thank you very much. Thank you. Case decided. We'll stand submitted.
judges: Kozinski, Berzon, Tallman